UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL W. CRANDALL,<br><br>            Plaintiff,<br><br>    v.<br><br>SEAGATE TECHNOLOGY, BEST BUY CO., INC., SEAGATE TECHNOLOGY (THAILAND), LTD,<br><br>            Defendants. | Case No. 1:10-CV-128-MHW<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Plaintiff's Motion for Declaratory Judgment (Dkt. 39), Defendant Best Buy Co., Inc.'s Motion for Summary Judgment (Dkt. 47), Plaintiff's Motion to Amend Amended Complaint (Dkt. 51), and Plaintiff's Motion to Amend the Scheduling Order (Dkt. 59).

## PROCEDURAL BACKGROUND

Plaintiff Daniel W. Crandall ("Plaintiff" or "Crandall") filed this lawsuit on March 9, 2010. The Scheduling Conference Order stated that the amendment of pleadings was to occur no later than July 15, 2010. On July 1, 2010, Plaintiff filed a motion to file a first amended complaint. This motion was granted and the Amended Complaint was filed on August 9, 2010. On October 20, 2010, Plaintiff filed a motion to file a second amended complaint and on November 12, 2010, he filed a motion to amend the scheduling order to extend the deadline for amendment of pleadings, both of which Defendants oppose.

**Memorandum Decision and Order - 1**

**FACTUAL BACKGROUND**

Plaintiff brings this lawsuit as the legal assignee of claims for Backups Plus Computer Services, LLC d/b/a DocTech.us ("DocTech.us"), an Idaho limited liability company. DocTech.us is a small technology services provider that services the computer hardware, software and data warehousing needs of small physician practices and medical billing companies in Idaho. Plaintiff alleges that in September 2008 DocTech.us purchased several 7200.11 hard drives manufactured by Seagate Technology Thailand Ltd. ("Seagate Thailand"), a subsidiary of Seagate Technology ("Seagate Technology") (collectively, these entities will be referred to as "Seagate") at a Best Buy store located in Nampa, Idaho. After installing the hard drives in accordance with Seagate's guidelines and industry standards, Plaintiff alleges that the hard drives performed in accordance with Seagate's guidelines and industry standards until May 21, 2009 when the DocTech.us computer systems suffered a sudden and catastrophic mechanical breakdown of two of the six hard drive components, which resulted in the total loss of functionality of the DocTech.us systems and its hosted clients' computer systems. Plaintiff brings claims of negligence, strict products liability and breach of warranty against Best Buy and Seagate. Plaintiff has filed a motion for declaratory judgment on the issue of whether Best Buy is immune from liability under the Idaho Products Liability Reform Act. Best Buy responded by moving for summary judgment on all claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *See id*. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or depositions excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## DISCUSSION

**1.  Strict Products Liability Claim**

The Idaho Products Liability Reform Act provides, in part:

> In the absence of express warranties to the contrary, product sellers other than manufacturers shall not be subject to liability in circumstances where they do not have a reasonable opportunity to inspect the product in a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition which is in issue; or where the product seller acquires the product in a sealed package or container and sells the product in the same sealed package or container. The liability limitation of this subsection shall not apply if:
> (a)  The product seller had knowledge or reason to know of the defect in the product;
> (b)  The product seller altered, modified, or installed the product, and such alteration, modification or installation was a substantial proximate cause of the incident giving rise to the action, was not authorized or requested by the manufacturer and was not performed in compliance with the directions or specifications of the manufacturer;
> (c)  The product seller provided the plans or specifications for the manufacture or preparation of the product and such plans or specifications were a substantial cause of the product's alleged defect.
> (d)  The product seller is a wholly-owned subsidiary of the manufacturer, or the manufacturer is a wholly-owned subsidiary of the product seller.
> (e)  The product seller sold the product after the expiration date placed on the product or its package by the manufacturer.

I.C. § 6-1407(1).  A product seller is defined as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for the use or consumption.  The term includes a manufacturer, wholesaler, distributor or retailer of the relevant product."  I.C. § 6-1402(1).

**Memorandum Decision and Order - 4**

The Idaho Supreme Court has held that a retailer may be liable under section 6-1407(1) if one of several events occurred: (1) the retailer made express warranties concerning the product that were inconsistent with those made by the manufacturer; (2) the retailer had a reasonable opportunity to inspect the product and should have discovered the alleged defect; (3) the retailer had reason to know of the alleged defect; or (4) the retailer altered, modified, or installed the product's defective component. *Hawks v. EPI Products USA, Inc.*, 129 Idaho 281, 287 (1996) (citing *Hoopes v. Deere & Company*, 117 Idaho 386, 390 (1990)).

Best Buy contends that there is not sufficient evidence to support Plaintiff's allegation that Best Buy knew or had reason to know of the alleged defect. Further, that Plaintiff's reference to internet blogs and articles are not sufficient to charge it with the requisite knowledge nor do these materials establish the existence of a defect in the product.

Plaintiff responds that the evidence of the defect is so voluminous and omnipresent in the public domain that Best Buy should have known that the loss of use and functionality of the computer systems would be catastrophic when the hard drives failed. Plaintiff attaches several print outs from the internet consisting of articles and reviews complaining about the Seagate 7200.11 hard drives. Plaintiff also contends that based on numerous public complaints, requests for returns and warranty work, Best Buy should

have known of these hard drives were defective.[1]

Most of the provisions found in I.C. § 6-1407(1) clearly do not apply. Best Buy sold the drives in their original packaging and the alleged defective components were sealed within a contamination controlled environment. Because of the packaging, Best Buy states there was not an opportunity to inspect the drives. There is no evidence that Best Buy altered or modified the product. Best Buy did not provide the plans or specifications for the product to Seagate nor did it sell the product after its expiration date. Best Buy is not a wholly owned subsidiary of Seagate. Best Buy also asserts that it did not make any express warranties that were inconsistent with those made by the manufacturer.[2]

The only provision that could arguably apply is that Best Buy had knowledge or reason to know of the defect in the product. However, the only evidence offered in support of this is various blog postings and articles from the internet complaining of problems with the Seagate 7200.11 hard drives, including one found on the Best Buy Geek Squad's blog.

Black's Law Dictionary defines "knowledge" as "an awareness or understanding of a fact or circumstance; a state of mind in which a person had no substantial doubt

---

[1] Plaintiff does not cite to any evidence that Best Buy received complaints or requests for returns or warranty work. Plaintiff states that Best Buy must keep track of these matters but that these questions have not been answered in discovery. *See* Pla's Response (Dkt. 52), p. 4.

[2] Plaintiff's contention that Best Buy did make express warranties at the time of purchase will be addressed later in this opinion.

**Memorandum Decision and Order - 6**

about the existence of a fact" and "reason to know" as "information from which a person of ordinary intelligence - or of the superior intelligence that the person may have - would infer that the fact in question exists or that there is a substantial enough chance of its existence that, if the person exercises reasonable care, the person can assume the fact exists." Black's Law Dictionary (9th ed. 2009). There is no evidence or allegation that Best Buy had an awareness that the Seagate drives were defective or was aware of such information that a reasonable person would infer the drives were defective. The mere existence of complaints on the internet does not suffice to meet the provisions of the statute. Moreover, even if Best Buy were aware of the various complaints and articles on the internet, they do not establish the existence of a defect and Best Buy could not be said to have reason to know of such.

The IPLRA also provides that a product seller other than a manufacturer will be subject to liability of the manufacturer if:

> (1) The manufacturer is not subject to service of process under the laws of the claimant's domicile; or
> (2) The manufacturer has been judicially declared insolvent in that the manufacturer is unable to pay its debts as they become due in the ordinary course of business; or
> (3) The court outside the presence of a jury determines that it is highly probable that the claimant would be unable to enforce a judgment against the product manufacturer.

I.C. 6-1407(4).

Best Buy contends that the provisions of I.C. § 6-1407(4) do not apply in this case. It contends that Seagate Technology and Seagate Thailand are subject to service of

process under Idaho's service of process statute, specifically I.C. § 5-508. Seagate Technology is incorporated in the Cayman Islands but its principal office is located in Scott Valley, California. Seagate Thailand is a subsidiary of Seagate Technology and domiciled in Thailand. Further, there is no support for the contentions that Seagate has been declared insolvent or that a claimant would be unable to enforce a judgment against it.

Plaintiff argues that Seagate Technology and Seagate Thailand are not subject to service of process under Idaho law because they have failed to register with the Idaho Secretary of State and appoint an agent for service of process in Idaho. Plaintiff's other contention is that because an insurance policy has not been located under which an insurance company would be liable to satisfy a possible judgment in this action or to indemnify or reimburse for payments made to satisfy a judgment, Plaintiff could not enforce a judgment against Seagate. Plaintiff further argues that even though Seagate appears to be well-capitalized, the fact that it cannot find its insurance policy relative to product liability suggests that it might not be able to satisfy a judgment against it.[3]

As for Plaintiff's service of process argument, the statute does not state that a product seller will be subject to liability if the manufacturer does not have a *registered agent* in the State of Idaho but rather it will be subject to liability if the manufacturer is not *subject to service of process* under the laws of the claimant's domicile. Idaho Code

---

[3] Plaintiff's own complaint alleges that Seagate Technology's revenues in 2009 were 9.8 billion dollars.

§ 5-515 provides that when a person is subject to the jurisdiction of the courts in Idaho, as one is when they commit a tortious act within the state under I.C. § 5-514, then service of process "may be made by personally serving the summons upon the defendant outside the state with the same force and effect as though summons had been personally served within this state." Further, Idaho law provides that when service needs to be made upon

> a foreign corporation having no managing or business agent, cashier or secretary within the state, . . . and such facts appear by affidavit to the satisfaction of the court and it also appears in the verified complaint on file that a cause of action exists against the defendant . . . and he is a necessary or proper party to the action, then the court may make an order for the publication of the summons, or, if the address of the defendant outside the state is known, may make an order that personal service of the summons may be made outside of the state in lieu of such publication.

I.C. 5-508. Under Idaho law, Seagate is subject to service of process. Additionally, Seagate Technology has filed a notice of appearance in this case and in its Amended Answer (Dkt. 41) responded to allegations against it and its subsidiary, Seagate Thailand.

As for Plaintiff's other arguments that I.C. § 6-1407(4) is applicable, the Court disagrees. The only evidence in support of the argument that Seagate could not satisfy a judgment is that it has not located an insurance policy. This does not meet the provisions of I.C. § 6-1407 which states that the manufacturer has to be judicially declared insolvent because it is unable to pay debts as they come due or a court has determined that the claimant would be unable to enforce a judgment. Plaintiff's mere speculation about his ability to enforce a judgment against the manufacturer does satisfy the provisions set forth

in the statute.

**2.      Negligence Claim**

Defendant Best Buy argues that because damages alleged by Plaintiff are purely economic losses, which are generally unrecoverable in negligence actions, the negligence claim should be dismissed.  In general, economic loss is not recoverable under a negligence theory.  *Duffin v. Idaho Crop Improvement Assoc.*, 126 Idaho 1002, 1007 (1995).  "Economic loss" includes "costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Id*. (citations omitted).  However, economic loss is recoverable in tort as a loss parasitic to an injury to person or property.  *Id*.  "Property loss" includes "damages to property other than that which is the subject of the transaction." *Id*. (citation omitted).

Best Buy contends that all of Plaintiff's damages itemized in his initial disclosures are for the repair and replacement of the alleged defective hard drives as well as loss of business, profits, customers, and time which are economic losses and not recoverable.[4]  However, Plaintiff contends that in addition to the hard drives, several dependent computer systems were also physically damaged and had a loss of primary functionality due to the defective hard drives.  Because these computer systems were not the subject of

---

[4] The damages listed in Plaintiff's initial disclosures include: Data Access Recovery Repair, hotel accommodations in California, airline travel expense to California, meal and expenses, emergency data migration drives, software to read partitions, Openfiler Enterprise Support, 24x7 childcare, Kroll On-Track Forensic Analysis, the cancellation of three contracts and loss of referrals, etc. (Wetherall Aff., Ex. D, Dkt. 47-4).

Plaintiff's purchase, Plaintiff contends his loss was not purely economic and should not be barred.

Plaintiff's argument regarding other property loss is related to the computer systems and other devices connected to the hard drives that lost their functionality when the hard drives malfunctioned. This is not separate property loss that occurred due to the defective hard drive. A loss of functionality of a dependent device is not property damage. For Plaintiff to proceed under this theory would be akin to finding that a car that broke down due to a defective engine caused injury to the car itself because it was unable to function without an engine. The only "property" damage in this case was to the hard drives which impacted the functionality of other systems but did not physically damage them, a point acknowledged by the Plaintiff during oral argument. Because the hard drives were the subject of the transaction, they are considered economic loss. All other damages listed by Plaintiff involve the repair of the defective property and loss of profits which are economic losses.

### 3. Breach of Warranty Claim

Plaintiff alleges that Defendants made certain warranties, express and implied, that the hard drive was merchantable, fit for the intended purpose and safe for normal use. To establish a breach of warranty action, the burden is on plaintiff to show the existence of a particular warranty, that the warranty was breached, and that the damage was proximately caused by the alleged breach. *Dickerson v. Mtn. View Equip. Co.*, 109 Idaho

711, 714 (Ct. App. 1985).

   A.   **Express Warranties**

An express warranty can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . ." I.C. § 28-2-313(1)(a). An express warranty is not created by a seller's mere affirmation of the value of the goods or statements purporting to be merely the seller's opinion or commendation of the goods. *Id. See Keller v. Inland Metals All Weather Conditioning, Inc.*, 129 Idaho 233, 237 (2003).

Plaintiff makes several allegations in his complaint that the Defendants made express and implied warranties that the component was merchantable, fit for the intended purpose and safe for normal use. However, Plaintiff does not state specifically what express warranty was made by Defendant Best Buy other than relating that when a Best Buy salesperson asked Tony Vargas[5] what he was using the hard drives for and Mr. Vargas responded that he was going to install them in a storage area network device, the salesperson nodded and commented: "These should be perfect." (Pla's Answer to Best Buy's Motion, Dkt. 52, at 9-10.) This is not an express warranty. At the most, this was a commendation of the goods which does not amount to an express warranty. There are no other statements cited by Plaintiff that could be construed as an express warranty and accordingly, there is no claim for breach of an express warranty against Best Buy.

---

   [5] Mr. Vargas holds a 50% interest in DocTech.us and was the one who purchased the Seagate hard drives.

B.  **Implied Warranties**

To recover for a breach of implied warranty of merchantability, the plaintiff must prove: (1) the goods purchased were subject to an implied warranty of merchantability; (2) the goods did not comply with the warranty at the time of delivery; (3) the purchaser's damages were due to the unmerchantable nature of the goods; and (4) damages were suffered as a result of the breach of warranty. *Dickerson v. Mountain View Equip. Co.*, 109 Idaho 711, 714 (Ct. App. 1985). Idaho Code § 28-2-314 provides that, unless excluded or modified, a warranty of merchantability is implied if the seller is a merchant in that kind of goods. Section 28-2-314 sets the minimum standards for merchantability, stating the goods must: "(a) pass without objection in the trade under the contract description . . . (c) [be] fit for the ordinary purposes for which such goods are used." This implied warranty does not guarantee that the goods are to be of the best or highest quality - the standard is measured by the generally acceptable quality under the description used in the contract. *Dickerson*, 109 Idaho at 714. The test for determining breach of an implied warranty of merchantability is to "examine whether the goods were unmerchantable at the time of delivery." *Id*. at 716.

Best Buy contends that by Plaintiff's own admission, the hard drives were of acceptable quality at the time he purchased them. In his Amended Complaint, Plaintiff alleges that after installing the hard drives, they "performed in accordance with Seagate's guidelines and industry standards until May 29, 2009 with no prior warning or indicia of

pending failure." (Amended Complaint ¶ 9.)  However, in his response briefing, Plaintiff contends that the goods were defective at time of manufacture.  It appears that the products worked properly for a period of approximately eight months based on Plaintiff's complaint and the affidavit of Tony Vargas (Dkt. 51-2).  Because they were not defective at the time of delivery, there cannot be a breach of this implied warranty.

An implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select and furnish suitable goods . . ."  I.C. § 28-2-315.

There is no evidence or allegations that the buyer relied on the seller's skill or judgment nor that the seller would have reason to know that the buyer was relying on its judgment if the buyer did indeed rely on it.  Tony Vargas attests that he called Best Buy and asked what was in stock for large hard drives and was informed there were only six one-terrabyte hard drives in stock.  Mr. Vargas asked them to hold the drives and the next day he went to Best Buy to purchase them.  While at Best Buy, a salesperson asked Mr. Vargas what he was using the hard drives for and Mr. Vargas informed him that they were for use in a storage area network device.  The salesperson nodded and stated "These will be perfect."  (Affidavit of Tony Vargas, Dkt. 51-2)  The allegations that a salesperson said the drives would "be perfect" for the buyer's intended purpose in no manner establishes that the buyer was relying on the seller to select and furnish suitable goods for

a particular purpose. In fact, Mr. Vargas had already made the decision to purchase the drives before he went to the store when he asked that they be held for him. There was no reliance and no implied warranty of fitness for a particular purpose was created.

4.      **Motion to Amend Complaint/Motion to Amend Scheduling Order**

Fed. R. Civ. P. 16(b)(4) provides that a scheduling order can be modified "only for good cause and with the judge's consent."

Plaintiff seeks leave to amend his complaint, and to extend the deadline for amendment of pleadings, to allege a claim for violation of the Idaho Consumer Protection Act, I.C. § 48-603. Plaintiff alleges that Defendants knowingly and willfully engaged in a scheme to dupe their customers by repackaging model ST31000340AS OEM 7200.11 hard disk drives in Seagate retail model ST310005N1A boxes, thereby representing that the hard drives were original or new when they were in fact deteriorated, altered, reconditioned, reclaimed, used or secondhand and representing that the hard disk drives had sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they did not have and representing that they were of a particular standard, quality, or grade. (Pla's Proposed Second Amended Complaint, Dkt. 51-4, at ¶ 51.) Plaintiff's allegations are based on the fact that the model number on the hard drives do not match the model numbers on the Best Buy sales receipt and also the hard drives bare a Original Equipment Manufacturer ("OEM") label. Plaintiff claims the hard drives were advertised, packaged and sold as model ST310005N1A, a retail version, without giving

**Memorandum Decision and Order - 15**

any disclosure that the true content of the retail box was model ST31000340AS.

Both Defendants object to Plaintiff amending his complaint since the deadline for amendment was July 15, 2010 and Plaintiff already amended his complaint once prior to that deadline. They contend that Plaintiff has not shown the requisite "good cause" as required by Rule 16 in that Plaintiff had the information he bases his amendment on prior to the cut-off date for pleading amendments. They also argue that the amendment should be denied because it would prejudice the Defendants, they would have to reformulate a discovery plan, repeat discovery efforts and expend attorney fees on additional pleadings and motions.

Further, Seagate contends the amendment would be futile. For Plaintiff to succeed on his claim for violation of I.C. § 48-603, he must demonstrate: (1) that the hard drives he purchased were in fact secondhand or that they were advertised of a particular model when they were of another, and (2) that Seagate knew or should have known this. Seagate sets forth that the "OEM" label Plaintiff complains of simply means that at one point prior to sale, the drives were intended for sale to a computer system manufacturer, such as Dell or HP, rather than for individual retail sale. (Affidavit of Paul McParland, Dkt. 56-1, ¶ 2.) Frequently such hard drives are not sold to a computer system manufacturer and are individually sold to retail customers instead. They are of the same quality as non-OEM drives. (*Id.* ¶¶ 2-3.) Seagate does not sell refurbished or used hard drives at retail. (*Id.* ¶ 4.) As for Plaintiff's other allegations regarding the model

numbers, Seagate informs that the number shown on the sales receipt is not a hard drive model number but the retail kit model number. The retail kit consist of the hard drive, packaging, some mounting hardware and documentation. A retail kit number is assigned to every model of kit sold and does not match the model number of the hard drive inside the kit. Accordingly, Seagate argues that there is nothing to establish that the hard drives were used or repackaged, Plaintiff's ICPA claim would be dismissed and therefore amendment is futile.

Plaintiff's request for amendment of the scheduling order is untimely. The deadline for amendment of pleadings was July 15, 2010. Plaintiff's motions were not filed until three months after this deadline. While the Court recognizes that Plaintiff is proceeding pro se and will give leeway in certain matters, it cannot do so to the prejudice of the Defendants. Discovery is moving forward in this case and to add a new cause of action would require the parties to repeat discovery efforts that have already been completed or are in progress. The Court has an obligation to keep this case moving forward in a timely manner.

Further, the Court finds that the amendment would be futile.

Idaho Code § 48-603 provides:

> The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful, where a person knows, or in the exercise of due care should know, that he has in the past, or is: . . .
> (2) Causing likelihood of confusion or of misunderstanding

> as to the source, sponsorship, approval, or certification of
> goods or services;
> (3) Causing likelihood of confusion or of misunderstanding
> as to affiliation, connection, or association with, or
> certification by, another; . . .
> (5) Representing that goods or services have sponsorship,
> approval, characteristics, ingredients, uses, benefits, or
> quantities that they do not have or that a person has a
> sponsorship, approval, status, affiliation, connection,
> qualifications or license that he does not have;
> (6) Representing that goods are original or new if they are
> deteriorated, altered, reconditioned, reclaimed, used, or
> secondhand;
> (7) Representing that goods or services are of a particular
> standard, quality, or grade, or that goods are of a particular
> style or model, if they are of another; . . .
> (9) Advertising goods or services with intent not to sell them
> as advertised; . . .
> (14) Making false or misleading statements of fact concerning
> the age, extent of use, or mileage of any goods; . . .
> (17) Engaging in any act or practice which is otherwise
> misleading, false, or deceptive to the consumer; . . .

Defendant Seagate has set forth evidence that OEM devices were of no different or lesser quality than other hard drives merely because they were initially designated to be sold to a computer system manufacturer. They are not used or refurbished hard drives. Further, Seagate submits that the discrepancy between the model numbers is that the one on the box is a retail kit model number, and as such, would not match the model number on the hard drive inside the box. They are two separate numbers. Plaintiff has set forth no evidence, other than unsupported assertions and information derived from internet searches, that the OEM devices are of lesser quality than other hard drives. At oral argument, Plaintiff conceded he has no evidence that an OEM disk is any different in

performance than an exact same model hard drive that is not marked OEM.  Plaintiff has submitted photographs that are apparently of the defective hard drives and photographs found on the Best Buy website of the product but there is no evidentiary basis for the Court to consider these photographs, i.e. an affidavit attesting to the source of the photographs.

The Court does not see any evidence that indicates Defendants were engaged in deceptive or misleading behavior when it came to selling these hard drives at this time that would justify amending the scheduling order which would cause prejudice to the Defendants and stall these proceedings.

## ORDER

**IT IS HEREBY ORDERED:**

1) Plaintiff's Motion for Declaratory Judgment (Dkt. 39), filed August 17, 2010, is DENIED**;**

2) Defendant Best Buy's Motion for Summary Judgment (Dkt. 47), filed September 10, 2010, is GRANTED;

3) Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. 51), filed October 20, 2010, is DENIED; and

4) Plaintiff's Motion to Amend the Scheduling Order (Dkt. 59), filed November 12, 2010, is DENIED.


DATED: January 25, 2011

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - 20**